IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 14-cr-130-WJM

UNITED STATES OF AMERICA,

 Plaintiff,

v.

**1. CARLOS ANDERSON,**

 Defendant.

---

**ORDER GRANTING MOTION FOR REDUCTION IN SENTENCE**

---

  On February 28, 2022 Defendant Carlos Anderson ("Anderson") filed a pro se Motion for Reduction in Sentence ("Motion"), seeking a reduction of his 132-month sentence to time served. (ECF No. 55.) On March 7, 2022, Anderson was appointed counsel (ECF No. 58), who supplemented the Motion (ECF No. 64.) The Government filed a response (ECF No. 65), and Anderson filed a reply. (ECF No. 66.) On July 28, 2022, the Court directed the Government to file Anderson's complete Bureau of Prisons ("BOP") records by August 19, 2022. (ECF No. 67). The Government filed the records as directed. (ECF No. 68).

  For the following reasons, the Court grants the Motion.

## I. BACKGROUND

  Carlos Anderson is currently serving a 132-month sentence for one count of violating 18 U.S.C. § 924(c)(1)(A), possession or use of a firearm in furtherance of drug trafficking. (ECF No. 64 at 2.) When Anderson was sentenced in 2015, all parties

agreed that Anderson was a career offender with a sentencing range of 262 to 327 months under the United States Sentencing Commission Guidelines ("Guidelines"). (*Id.*)  Under the relevant portion of Guidelines § 4B1.1(a), a "defendant is a career offender if . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).  One of the two prior felony convictions that formed the basis of Anderson's status as a career offender under § 4B1.1(a) was a violation of Colorado Revised Statutes § 18-18-405(1)(a), which the United States Court of Appeals for the Tenth Circuit held in *United States v. McKibbon*, 878 F.3d 967, 971–72 (10th Cir. 2017), is not a "controlled substance offense."  (ECF No. 64 at 1, 6–8.)  Had Anderson not been subject to § 4B1.1, his Guidelines sentence would have been 60 months, the statutory minimum.  18 U.S.C. 924(c)(1)(A)(i); U.S.S.G. § 2K2.4(b).

Ultimately, the Court imposed a 132-month sentence, which was a significant downward variance from the 262 to 327 months Guidelines range that the Court and both parties agreed was applicable.  (ECF No. 64 at 1.)

## II. ANALYSIS

Anderson invokes the Court's authority to grant what is commonly referred to as "compassionate release."  The statutory basis for compassionate release is as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

> defendant's facility, whichever is earlier, may reduce
> the term of imprisonment (and may impose a term of
> probation or supervised release with or without
> conditions that does not exceed the unserved portion
> of the original term of imprisonment), after considering
> the factors set forth in section 3553(a) to the extent
> that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant
>> such a reduction; . . .
>
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission . . . .

18 U.S.C. § 3582(c).

The Tenth Circuit has adopted a three-step test for district courts to apply when considering compassionate release motions: first, the Court must determine whether "extraordinary and compelling reasons warrant a sentence reduction"; second, the Court must find "whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and third, the Court "must consider any 18 U.S.C. § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (quoting *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020)) (alterations omitted). At step one, the Court has the power to find extraordinary and compelling reasons "based on [an] individualized review of all of the circumstances," including the fact that if Anderson were sentenced today, he "would not be subject to such a long term of imprisonment." *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021). However, such a sentencing disparity "cannot, standing alone, serve as the basis for a sentence reductions under § 3582(c)(1)(A(i)." *McGee*, 992 F.3d at 1048. As for step

3

two, the Tenth Circuit has concluded "that the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants." *Maumau*, 993 F.3d at 837.

If the Court finds any of these three steps do not support a sentence reduction, the Court may deny the Motion without considering the other steps. *McGee*, 992 F.3d at 1043. Because the Court finds that each step supports a sentence reduction, it considers them in turn.

### A. Extraordinary and Compelling Reasons

Anderson rests the Court's authority to grant a reduction to his sentence primarily upon "the incorrect original guideline calculation," which he argues "constitutes extraordinary and compelling reason to grant a reduction." (ECF NO. 64 at 1.) At sentencing, Anderson's counsel noted to the Court that the career-offender determination—and not Anderson's criminal history category—was the primary cause of the long Guidelines sentence. (ECF No. 44 at 15–17.) Just two years after the Court imposed the 132-month sentence Anderson is now serving, *McKibbon* made clear that Anderson's Colorado drug violation was not a qualifying offense. (*See id.* at 1; *McKibbon*, 878 F.3d at 971–72.)

In 2015, the Court understood Anderson's sentence to be a significant downward variance; but *McKibbon* revealed that it was in fact more than twice the length of the properly calculated Guidelines sentence. (*See* ECF No. 44 at 15–16.) Anderson has now served approximately 90 months of the sentence originally imposed (ECF No. 68-1 at 2), or two-and-a-half years more than he would have if he had been sentenced after *McKibbon* was decided. That Anderson now sits in prison when he would be free if he had been sentenced under a correct application of the Guidelines is obviously unjust.

4

But a "long sentence derived from [an incorrect application of law] cannot, by itself, be an 'extraordinary and compelling' reason for sentence reduction." *Maumau*, 993 F.3d at 838 (Tymkovich, C.J., concurring).

But his lengthy sentence is not the only basis to conclude that there exists extraordinary and compelling reasons for a sentence reduction. After reviewing Anderson's BOP records, the Court finds they show significant rehabilitation and a positive disciplinary record. *See United States v. Merriweather*, 2021 WL 3488407, at *5 n.36 (D. Kan. Aug. 9, 2021) ("While '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason' for a sentence reduction under § 3582(c)(1)(A), it may be considered in combination with other factors.") (quoting 28 U.S.C. § 944(t)).

In December 2018, staff at USP Florence reviewed Anderson's determined that lowering Anderson's security designation was appropriate. (ECF No. 68-2 at 6.) Relying on his institutional adjustment, clear conduct, and program participation, they recommended Anderson be transferred to FCI Florence, a lower-security facility. (*Id.*) Further, the BOP records submitted by the Government show that in more than 7 years of imprisonment, Anderson only has three disciplinary incidents. (ECF No. 68-18.) Of those incidents, two are connected to his initial poor attendance at his GED course. (*Id.*; ECF No. 68-19 at 1.) The third incident was the result of Anderson's refusal of "a direct order to return to his cell room." (ECF No. 68-4 at 5; ECF No. 68-18.) Anderson's refusal delayed his return to his cell room by at most 10 minutes. (*See* ECF No. 68-4 at 5.)

Like the defendant in *Maumau*, "if [Anderson were] sentenced today, . . . [he]

5

would not be subject to such a long term of imprisonment" because of an intervening change in law.  993 F.3d at 837.  This change in law has created a sentencing disparity between Anderson and similarly situated defendants sentenced after *McKibbon*.  Also like the defendant in *Maumau*, Anderson—despite his early attendance issues[1]—has participated in hundreds of hours of educational programming.  *Id.* at 827 (noting "Maumau's participation 'in over 400 hours of educational and wellness courses'").  Most importantly, Anderson's transfer to a lower-security facility is compelling evidence that he has taken significant steps toward rehabilitation.

After an individualized review of the change in law, the resulting sentencing disparity, Anderson's rehabilitation, and his overall good disciplinary record, the Court finds these factors, in combination and considered together, constitute extraordinary and compelling reasons warranting a sentence reduction in this case.  *See id.* at 837 (affirming finding of extraordinary and compelling reasons based on "a combination of factors," including "'Maumau's young age at the time of' sentencing; the 'incredible' length of his stacked mandatory sentences under § 924(c); the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that Maumau, 'if sentenced today, ... would not be subject to such a long term of imprisonment.'").

**B.    Applicable Policy Statements**

As the Tenth Circuit acknowledged in *McGee*, there are no policy statements "applicable" to defendant-filed motions, because Guidelines § 1B1.13 was drafted with the background understanding that only the BOP could file compassionate release

---

[1] Anderson's "progress assignment [was] changed from GED unsat[isfactory] to GED sat[isfactory]" on June 30, 2022.  (ECF No. 68-19 at 1.)

motions. 992 F.3d at 1050. Despite the First Step Act removing the BOP as gatekeeper, § 1B1.13 has not been updated to reflect the new reality because the Sentencing Commission has been without a quorum. *Id.* After recent appointments, the Sentencing Commission now has a full slate of Commissioners;[2] however, as of the date of this order, there remains no policy statement applicable to Anderson's motion.

**C.     Sentencing Factors**

The final step is for the Court to consider the sentencing factors. As the Supreme Court has instructed, the Court considers the "most up-to-date picture" of who Anderson is. *United States v. Pepper*, 562 U.S. 476, 492 (2011). In this light, the Court finds that the sentencing factors weigh in favor of a reduction in Anderson's sentence. *McKibbon*, the passage of time, and Anderson's conduct while incarcerated affect the following § 3553(a) sentencing factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . ;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. §§ 3553(a)(1), (4)(A), (6).

While the underlying facts of Anderson's crime of conviction and criminal history

---

[2] Madison Adler, *US Sentencing Commission Restocked After Senate Confirmations*, Bloomberg Law (Aug. 4, 2022, 7:32 PM), https://www.bloomberglaw.com/product/blaw/bloomberglawnews/us-law-week/XC7KMM7G000000/.

are not altered by *McKibbon*, in the Court's view, Anderson's "history and characteristics" must be viewed in a new light. When the Court imposed the current sentence, it considered the fact that Anderson was a career offender who possessed a firearm in the commission of a crime. (*See* ECF No. 44 at 58.) As discussed above, however, Anderson was not a career offender as that term is used in § 4B1.1(a). The primary cause of Anderson's long Guidelines sentence was his criminal history, specifically because it qualified him as a career offender. (ECF No. 44 at 15–16.) On the current record and understanding of the law, the Court finds that Anderson is not a career offender. And because Anderson's Guidelines sentence would have been 60 months without the erroneous application of § 4B1.1(a), the Court finds this factor weighs in favor of a reduction.

The kinds of sentences available for Anderson's crime of conviction, viewed with the most up-to-date information in mind, weighs heavily in favor of reduction. As defense counsel pointed out at the time of sentencing, without the career offender designation, Anderson's Guidelines sentence would have been 60 months, the mandatory minimum sentence. (ECF No. 44 at 15–16.) Not only is this sentence much shorter than the one the Court originally imposed, it is also significantly shorter than the amount of time Anderson has already served.

Finally, the need to avoid an unwarranted sentencing disparity weighs heavily in favor of a sentence reduction. The disparity is definite and pronounced, and cannot be ignored. A similarly situated person sentenced after *McKibbon* would have served a 5-year sentence and would already have been released. (*See id.*) Anderson, on the other hand, remains in prison because he was sentenced before *McKibbon* was

decided. This disparity has no reasonable basis[3] and is therefore unwarranted. Justice requires the Court to take action, and it finds this factor further weighs in favor of a reduction.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. Anderson's Motion (ECF No. 55) is GRANTED, and his sentence is reduced to **time served**;

2. This order is stayed for up to fourteen days for the verification of Anderson's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure his safe release;

3. Anderson shall be released as soon as a residence is verified, a release plan is established, and appropriate travel arrangements are made;

4. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended;

5. Anderson's previously imposed conditions of supervised release remain

---

[3] The Court is cognizant of the need for finality in sentencing and the limited scope of § 3582(c). Standing alone, the fact that the sentence imposed is obviously longer than it should have been would not be grounds to reduce Anderson's sentence. *Maumau*, 993 F.3d at 838 (Tymkovich, C.J., concurring). However, "a district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison)." *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022); *accord United States v. Arriola-Perez*, 2022 WL 2388418, *2 (10th Cir. July 1, 2022). Taking all of these proper factors into consideration, the Court finds both that extraordinary and compelling reasons exist and that the sentencing factors weigh in favor of a reduced sentence.

unchanged; and

6. Government counsel is DIRECTED to forthwith coordinate with defense counsel, the Probation Office, and the Bureau of Prisons to facilitate full and timely compliance with this Order.

Dated this 24th day of August, 2022.

BY THE COURT:

_____
William J. Martínez
United States District Judge